DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ADLEY DASILVA, P.A.,**
Appellant,

v.

**STATE OF FLORIDA DEPARTMENT OF HEALTH,**
Appellee.

No. 4D2023-0856

[April 17, 2024]

Appeal from the State of Florida, Board of Medicine, Department of Health; L.T. Case Nos. 2022-17017 & 2022-08713 (DOH), 2022-2480PL & 2022-2481PL (DOAH).

Sean M. Ellsworth of Ellsworth Law Firm, P.A., Miami, for appellant.

Sarah Young Hodges, Chief Appellate Counsel, Florida Department of Health, Prosecution Services Unit, Tallahassee, for appellee.

GROSS, J.

Adley Dasilva appeals a final order of the Board of Medicine revoking his license to practice as a physician assistant. We affirm in part and reverse in part.

This case arises out of disciplinary proceedings brought by the Department of Health against Dasilva, a licensed physician assistant ("P.A."), based on allegations that he committed a variety of professional misconduct, including performing complex plastic surgery procedures beyond the scope of his license.

### The Department's Administrative Complaint

The Department's amended administrative complaint against Dasilva contained eight counts. The following counts are relevant to this appeal.

Count I alleged that Dasilva practiced beyond the scope permitted by law, or performed professional responsibilities which he knew or had reason to know he was not competent to perform, in violation of section

456.072(1)(o), Florida Statutes (2021), by independently performing liposuction, VASER liposuction, Brazilian Butt Lifts, abdominoplasty, breast augmentation, and blepharoplasty procedures.

Count IV asserted that Dasilva disseminated or caused the dissemination of an advertisement without clearly identifying himself as a physician assistant by displaying his VASER liposuction course certificate on his office wall, thereby violating section 458.331(1)(nn), Florida Statutes (2021), through a violation of Florida Administrative Code Rule 64B8-30.011(5).

Count V alleged that by independently performing those plastic surgery procedures identified in Count I, Dasilva violated section 458.331(1)(nn), Florida Statutes, (2021), through a violation of Rule 64B8-9.009(2)(o), which provides that all physicians performing office surgery must be qualified by education, training and experience to perform any procedure performed in the office surgery setting.

Count VI asserted that by performing a "Level II and/or Level III surgery" at his office on one or more occasions without staff privileges at any hospital or satisfactory training such as board certification, Dasilva violated section 458.331(1)(nn), Florida Statutes (2021), through a violation of Rule 64B8-9.009(4)(b)2.a. and/or Rule 64B8-9.009(6)(b)1.a.

Dasilva disputed the factual allegations and requested a formal hearing.

### *The Formal Hearing*

The hearing evidence revealed the following facts.

*A. The Department's Case*

In early 2022, Dasilva performed Brazilian Butt Lifts, liposuction, VASER liposuction, abdominoplasty, breast augmentation, and blepharoplasty procedures on patients without a physician in the operating room or on the premises. For example, on January 5, 2022, Dasilva performed VASER liposuction, an abdominoplasty, a breast augmentation, and a BBL on patient T.M. at Dasilva's office without a physician on the premises.

During the Department's investigation of this case, Dasilva's supervising physician, Dr. Vinas, stated he was not present at Dasilva's office on January 5, 2022, he was at his own office seeing patients, he had

no record of T.M. ever being his patient, and he never consulted on T.M.'s case. In early February 2022, Dr. Vinas sent Dasilva an email stating that "[w]e have seen many patients in Instagram with surgeries you should NOT be doing. A Rhinoplasty, breast augs, eyelid surgeries, male gynecomastia, facelifts, buccal fat pads removal, etc. These are not approved by me." Dr. Vinas added that their arrangement was "for liposuction only."

Dr. Pat Pazmino, a board certified plastic surgeon, testified as an expert on behalf of the Department. To become a licensed physician, he explained, one must complete four years of medical school after college. And to become a plastic surgeon, one must complete a six-year residency where one performs surgeries on a daily basis.

Dr. Pazmino considered all of the plastic surgery procedures at issue in this case to be "complex." Without undergoing a "medical school program, residency or an equivalent type of training and education program," one would not be competent to perform any of these procedures. Short-term training or education programs in plastic surgery are not intended to replace a medical school curriculum or residency program.

Having reviewed Dasilva's deposition testimony, Dr. Pazmino opined that Dasilva "does not have the education, training or experience to competently perform any of these procedures." Dr. Pazmino explained that Dasilva completed a 27-month physician assistant program, where Dasilva would have received "no education in abdominoplasty, liposuction, Brazilian butt lift, blepharoplasty or breast augmentation." Dr. Pazmino further explained that Dasilva "does not have training to independently perform these procedures," adding: "I did see that he does have training and experience in assisting plastic surgeons in performing this but that is completely different than independently performing them."

Dr. Pazmino concluded that the "plastic surgery procedures outlined in the complaint" were "not in accordance with Dasilva's education and training." He further explained how Dasilva's improper care resulted in one patient, T.M., having widespread necrosis of her abdominal skin.

A clinical professor at a physician assistant school testified that physician assistants complete a 24-to-27 month program which does not include any courses or clinical rotations teaching students how to perform plastic surgery procedures.

The remaining testimony concerned Count IV of the complaint.

3

In March 2022, a Department investigator inspected Dasilva's plastic surgery office and observed various certifications and licenses on the wall in the reception area, including a certification of attendance at a "Vaser High Definition Lipo Course." The certification was issued to Dasilva, but the credential after his name was whited out. The investigator believed someone had whited out the letters "P.A."

However, when shown a better copy of the certificate on cross-examination, the investigator acknowledged that the credential "M.D." had been whited out, not the designation "P.A." The certification was hanging on the wall near Dasilva's diploma from his P.A. program.

*B. Dasilva's Case*

Dasilva testified about his training and experience. He explained that he shadowed a plastic surgeon in physician assistant school, but he never assisted him with any surgery.

After graduation, Dasilva volunteered as a "first assist" at a med spa for about a year so he could learn about plastic surgery. From 2013 to 2017, Dasilva worked for a plastic surgery practice as a "first assist" who also did injections.

Beginning in 2017, Dasilva worked at a different plastic surgery practice, where he assisted with about 40 procedures. Most of the time, the physician would start the procedure and then leave, allowing Dasilva to complete the procedure by himself. The procedures included liposuction, facelifts, BBLs, tummy tucks, and breast augmentations.

In 2018, Dasilva acquired a practice from a retiring physician and brought on Dr. Vinas as his medical director and supervising physician. Over the years, Dasilva attended a "significant amount" of one-to-two day training sessions covering various procedures.

From 2018 to 2022, Dasilva performed about 200 procedures at his practice under "indirect supervision," including liposuction, BBLs, facelifts, blepharoplasties, breast augmentation, and tummy tucks. He said that "indirect supervision" is when the physician is available through telecommunication but is not physically present in the operating room. Dasilva paid Dr. Vinas a commission for every procedure Dasilva performed under indirect supervision. Dr. Vinas remained Dasilva's supervising physician until February 11, 2022. Immediately thereafter, another physician became his medical director and supervising physician.

C. *Dasilva's Deposition*

Dasilva's deposition was admitted into evidence. When asked about each of the surgeries on the patients at issue in this case, Dasilva testified that he performed the surgeries under the indirect supervision of Dr. Vinas. Dasilva admitted that he did not know whether Dr. Vinas was in a different surgery at the time Dasilva performed surgeries. Dasilva nonetheless assumed Dr. Vinas was available by phone during the surgeries at issue, because someone at Dr. Vinas's office would always pick up the phone if he reached out, though he admitted it was not always Dr. Vinas. Dasilva acknowledged that Dr. Vinas would not stop a surgery to talk to him on the phone, but he noted that "at least there would be some type of communication."

## *Recommended Order*

The administrative law judge (ALJ) entered a recommended order making the following findings of fact relevant to this appeal.

Relying on the "persuasive and credible" testimony of Dr. Pazmino, the ALJ found that Dasilva "lacks the sufficient education, training, and experience required to competently perform liposuction, VASER Liposuction, a BBL, abdominoplasty, breast augmentation, and blepharoplasty independently." The ALJ concluded that a person who has not completed medical school and a medical residency, or an equivalent type of training and education, "is simply not competent to perform" such procedures.

Emphasizing that Dasilva is not a medical doctor and has no formal education beyond his 27-month physician assistant program, the ALJ found that Dasilva "lacks the education, training, and experience necessary to perform these complex medical plastic surgeries." Additionally, the ALJ found that the procedures at issue were office surgeries performed while the patients were under general anesthesia with intubation. The ALJ also made extensive findings regarding Dasilva's care of T.M.

The ALJ found by clear and convincing evidence that the VASER liposuction course certification was an advertisement and that "neither the term 'physician assistant,' nor initials 'P.A.' appeared anywhere on the certificate." However, the ALJ also found that the certification was "next to" Dasilva's "physician assistant license, which clearly identified him as a physician assistant."

5

The ALJ drew the following conclusions of law.

As to Count I, the Department proved by clear and convincing evidence that Dasilva practiced beyond the scope permitted by law, or accepted and performed professional responsibilities which he knew, or had reason to know, he was not competent to perform, by independently performing the complex plastic surgeries on five patients. Even if Dasilva performed the plastic surgeries under the indirect supervision of a physician, this does not mean that the surgeries were within Dasilva's scope of practice and that he was competent to perform them.

As to Count IV, the ALJ found that the VASER liposuction course certification constituted an advertisement, which violated an administrative rule because it contained his name without clearly identifying him as a physician assistant.

As to Counts V and VI, the ALJ found that Dasilva violated administrative rules by performing office surgeries while the patients were under general anesthesia with intubation, which were Level III surgeries that were required to be performed by a physician.

The ALJ recommended revoking Dasilva's license to practice as a physician assistant.

### *The Final Order*

The Board entered a final order denying Dasilva's exceptions, adopting the ALJ's findings of fact and conclusions of law, and approving the recommended penalty that Dasilva's license be revoked. This appeal ensued.

### *Standard of Review*

In an appeal from final administrative action, we review the agency's findings of fact for whether they are supported by competent substantial evidence, but we review the agency's conclusions of law de novo. *Q.H. v. Sunshine State Health Plan, Inc.*, 307 So. 3d 1, 8 (Fla. 4th DCA 2020).

### *The Parties' Arguments*

Dasilva primarily argues that the Board erred as a matter of law in concluding that Florida law requires the completion of medical school and a medical residency to perform the plastic surgery procedures at issue in this case. He contends that such requirements would categorically

prohibit physician assistants from performing such procedures, even when delegated by a board-certified supervising physician.

The Department responds that the Board properly interpreted the law in concluding that Dasilva practiced outside the scope of a physician assistant and lacked the competency to perform the complex surgeries he undertook. The Department disagrees with Dasilva's suggestion that mere delegation by a supervising physician imputes competency. Even if a task is delegated by a supervising physician, the Department argues, a physician assistant has the independent responsibility to refuse delegations outside their training and education. The Department contends that it was not imposing a "categorical prohibition," but rather proved with competent, substantial evidence that Dasilva did not have the training or experience to perform the procedures, regardless of the level of supervision.

### *Competent Substantial Evidence Supports the Board's Determination That Dasilva Accepted and Performed Professional Responsibilities He Knew, or Had Reason to Know, He Was Not Competent to Perform*

*A. The Relevant Statutes and Administrative Rules as to Count I*

In Count I, Davila was charged with violating section 456.072(1)(*o*), Florida Statutes (2021), which provides for discipline of a licensee for "[p]racticing or offering to practice beyond the scope permitted by law or accepting and performing professional responsibilities the licensee knows, or has reason to know, the licensee is not competent to perform."

Section 458.347(4)(h), Florida Statutes (2021), contained within the statute governing physician assistants, states that "[a] licensed physician assistant may perform services delegated by the supervising physician in the physician assistant's practice in accordance with his or her education and training unless expressly prohibited under this chapter, chapter 459, or rules adopted under this chapter or chapter 459." "The purpose of [section 458.347] is to authorize physician assistants, with their education, training, and experience in the field of medicine, to provide increased efficiency of and access to high-quality medical services at a reasonable cost to consumers." § 458.347(1), Fla. Stat. (2021).

Florida Administrative Code Rule 64B8-30.012, implementing section 458.347(4)(h) and existing in its current form since 2016, authorizes a supervising physician to permit a physician assistant to perform a task or procedure within the supervising physician's scope of practice, under

direct or indirect supervision based on reasonable medical judgment, so long as the supervising physician is "certain" that the physician assistant is knowledgeable and skilled in performing the assigned task or procedure:

(1) A supervising physician shall delegate only tasks and procedures to the physician assistant which are within the supervising physician's scope of practice. **The physician assistant may work in any setting that is within the scope of practice of the supervising physician's practice.** The supervising physician's scope of practice shall be defined for the purpose of this section as "those tasks and procedures which the supervising physician is qualified by training or experience to perform."

(2) **The decision to permit the physician assistant to perform a task or procedure under direct or indirect supervision is made by the supervising physician based on reasonable medical judgment** regarding the probability of morbidity and mortality to the patient. Furthermore, the supervising physician must be **certain** that the physician assistant is knowledgeable and skilled in performing the tasks and procedures assigned.

Fla. Admin. Code. R. 64B8-30.012(1) & (2) (emphasis added).

"Direct supervision" means "the physical presence of the supervising physician on the premises so that the supervising physician is immediately available to the physician assistant when needed." Fla. Admin. Code R. 64B8-30.001(4).

"Indirect supervision" means "the easy availability of the supervising physician to the physician assistant, which includes the ability to communicate by telecommunications. The supervising physician must be within reasonable physical proximity." Fla. Admin. Code R. 64B8-30.001(5).

The legislature enacted section 458.347(4)(h) as part of the 2016 amendments to the physician assistant statute. Ch. 2016-125, § 1, Laws of Fla. Consistent with the legislature's adoption of section 458.347(4)(h), the Board of Medicine amended rule 64B8-30.012 in 2016 to remove language that prohibited certain tasks from being delegated to physician assistants at all, and that prohibited other tasks from being performed by physician assistants under indirect supervision. *See* Proposed Rules, Fla. Admin. Reg. Vol. 42/102 (May 25, 2016) (striking such language); *see also*

Notice of Development of Proposed Rules, Fla. Admin. Reg. Vol. 42/46 (Mar. 8, 2016) ("The Board proposes the development of a rule amendment to remove language which prohibits physician assistants from performing certain delegated tasks.").

*B. Discussion*

The Board correctly interpreted the law when it found that Dasilva practiced outside the scope of his physician assistant license and performed complex plastic surgeries he was not competent to perform. Section 456.072(1)(*o*) authorizes discipline of a licensee for "[p]racticing or offering to practice beyond the scope permitted by law or accepting and performing professional responsibilities the licensee knows, or has reason to know, the licensee is not competent to perform."

The ALJ made a finding of fact, adopted by the Board, that "[a]n individual who has not completed medical school and a medical school residency, or an equivalent type of training and education, is not competent to perform liposuction, VASER liposuction, a BBL, abdominoplasty, breast augmentation, and blepharoplasty."

This finding of fact is supported by competent, substantial evidence. Dr. Pazmino testified that Dasilva "does not have the education, training or experience to competently perform any of these procedures" independently. Based on the context of the testimony and the ordinary meaning of the term "independently," Dr. Pazmino clearly used the term "independently" to refer to Dasilva performing procedures without a plastic surgeon present. For example, when Dr. Pazmino described his own training, he suggested that performing a surgery "independently" meant doing so without direct supervision. He explained that he learned to perform abdominoplasties by "working under direct supervision and then ultimately independently in my plastic surgery residency . . . ."

The protracted development of professional competence for plastic surgeons contrasts with the abbreviated training period for physician assistants. To become a licensed plastic surgeon, a physician must complete four years of medical school plus a six-year surgical residency. Physician assistant programs last about two years and do not train students to perform plastic surgery procedures. The Department's expert testified that short-term training or education programs in plastic surgery cannot substitute for a medical school curriculum and a residency program. Dasilva's training and experience—shadowing a plastic surgeon in P.A. school, acting as a "first assist" on plastic surgeries, and attending one-to-two-day training sessions—do not approach the education and

experience required to become competent to perform the procedures at issue.

Dasilva maintains that "Florida law permitted him to perform such procedures when delegated by, and under the indirect supervision of, a qualified Florida licensed physician." However, the flaw in this argument is that Florida law prohibits a physician assistant from performing professional responsibilities he knows or should know he is not competent to perform. Mere delegation does not automatically confer competency within the meaning of section 456.072(1)(*o*).

Although no statute or rule expressly prohibits a physician assistant from performing the plastic surgeries at issue, section 458.347(4)(h)'s plain language requires that any services delegated to a physician assistant must be "in accordance with his or her education and training." Section 458.347(4)(h) and rule 64B8-30.012 do not specifically enumerate the tasks a physician assistant may or may not perform. Instead, those provisions require an individualized approach to determining a physician assistant's scope of practice. Some tasks or procedures may be too complex as a practical matter to be "in accordance with" the "education and training" of a physician assistant, such that those procedures could not be delegated to a physician assistant under indirect supervision.

Contrary to Dasilva's argument, the Department did not adopt a "categorical rule" prohibiting physician assistants from performing the subject procedures as a matter of law. Rather, the Department presented competent, substantial evidence that a physician assistant who has not attended medical school and completed a medical residency in plastic surgery, or undergone an equivalent type of education and training, is not competent to perform the procedures as a matter of fact. This is not the same as adopting a categorical rule as a matter of law. For example, a foreign-trained medical doctor who later became a physician assistant in the United States might be able to demonstrate competence to perform certain plastic surgeries. Here, the Department established that Dasilva lacked sufficient education and training to perform complex plastic surgeries independently.

### *The Final Order as to Count IV Must be Set Aside Because the Undisputed Evidence Showed that Dasilva Clearly Identified Himself as a Physician Assistant*

Dasilva was charged with violating Florida Administrative Code Rule 64B8-30.011(5), which provides that no physician assistant "shall disseminate or cause the dissemination of any advertisement or

advertising that contains the licensee's name without clearly identifying the licensee as a physician assistant (P.A.)."

We do not need to decide whether the VASER liposuction course completion certificate was an "advertisement" because, as the hearing officer found, it was hung in the office reception area "next to" Dasilva's "physician assistant license, which clearly identified him as a physician assistant."

The only reason why the course certificate could plausibly constitute "advertising" is that it was displayed on an office wall to influence potential patients. Thus, the display must be analyzed in its entirety, considering the collective impression left on the viewer, rather than isolating individual documents. Because the course certification was displayed on an office wall next to a document clearly identifying Dasilva as a physician assistant, we hold that Dasilva did not violate Rule 64B8-30.011(5).

### *Dasilva's Challenge to Counts V and VI Was Not Preserved for Appellate Review*

Dasilva argues that the Board's conclusions as to Counts V and VI must be set aside because the requirements in the office surgery rules apply to the supervising physician who delegates the task, not the physician assistant operating under supervision. We do not reach the merits of Dasilva's challenge to Counts V and VI because the issue was not preserved. "An appellant cannot raise issues on appeal that were not properly excepted to or challenged before an administrative body." *Colonnade Med. Ctr., Inc. v. State, Agency for Health Care Admin.*, 847 So. 2d 540, 542 (Fla. 4th DCA 2003). Here, although Dasilva raised this argument in his proposed recommended order, he failed to raise any challenge to Counts V and VI in his exceptions to the ALJ's recommended order.

### *Conclusion*

We affirm in part, reverse in part, and remand to the Department of Health to reconsider the proper penalty in the absence of a violation of Count IV. Our remand for such reconsideration is not intended to exclude the possibility of reimposing Dasilva's license revocation as a proper penalty. Rather, we offer no comment as to the proper penalty to be imposed.

*Affirmed in part, reversed in part, and remanded.*

GERBER and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***